UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**    ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [35]

## I.   Introduction

The Securities and Exchange Commission ("SEC") brought this action alleging several violations of the securities laws against Stephen Moleski and David Michael ("the individual Defendants") and asserting claims for unjust enrichment against several companies alleged to be controlled by them ("the relief Defendants").[1] After Defendants failed to answer Plaintiff's complaint, the Clerk entered a default.

Plaintiff now brings the instant motion for default judgment [35]. For the below reasons, Plaintiff's motion is GRANTED.

## II.   Background

The SEC filed this suit, alleging a number of securities violations by individual Defendants Moleski and Michael. First, the SEC alleged that Moleski and Michael solicited investors for unregistered securities offered by Web Blockchain Media, Inc. ("Web") and Heartland Income Properties, LLC ("Heartland") in exchange for a commission from the issuers. Compl. ¶¶ 21-33, ECF No. 1. Further, the SEC alleges that Moleski and Michael were not registered as brokers while doing so, nor affiliated with any registered broker. *Id.* The SEC alleges that the issuers paid some of the commissions to three relief Defendants: Austin Partners I, LLC, Austin Media Group, LLC, and Austin Marketing Group, LLC, entities controlled by Moleski and Michael. *Id.* ¶¶ 25, 32.

---

[1] The SEC also named Erik Jones as a defendant; Jones reached a settlement with the SEC and is not part of this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

Second, the SEC alleges that the individual Defendants created Austin Partners I as a private pooled investment fund ("the Fund"), soliciting investors to purportedly invest in a portfolio of "high-quality Investments" selected by Moleski and Michael, such as securities from Web, Heartland, and Life Investors Management Company ("LIMC") and other investments in "stocks, real estate, precious metals, energy" and other opportunities. *Id.* ¶¶ 34-38. However, according the SEC, the Fund actually held only one investment: Heartland securities. Moleski and Michael did not disclose to investors that they received a commission on this investment, and the SEC further alleges that the two misappropriated money from the Fund for their own personal expenses. *Id.* ¶ 39. When the individual Defendants learned the SEC was investigating their conduct, they allegedly phased out the use of Austin Partners I and Austin Marketing Group for Fund activities, replacing them with Alliance Management Group, LLC and Austin Partners, LLC. *Id.* ¶ 41.

After the SEC brought this suit and served the Defendants, the Defendants failed to answer or otherwise respond, prompting the SEC to now bring this motion for default judgment.

### III.    Motion for Default Judgment

Courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *see also Elektra Entertainment Group Inc. v. Bryant*, 2004 WL 783123, *1-2 (C.D. Cal. Feb. 13, 2004). Upon consideration of Plaintiff's complaint and the materials provided in support of Plaintiff's motion, the Court is persuaded that the *Eitel* factors favor granting Plaintiff's motion.

#### A.    Merits of Plaintiff's Claims and Sufficiency of the Complaint

Together, the second and third *Eitel* factors test the allegations in the plaintiff's complaint and whether they state a claim on which the plaintiff may recover. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002). In evaluating these factors, the well-pleaded allegations of the complaint are taken as admitted. *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986).

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

The factual allegations in Plaintiff's complaint state claims for relief against Defendants.

1. **Section 5 of the Securities Act**

The first claim for relief in the Compliant is for violations of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c). Compl. ¶¶ 43-46. These sections prohibit the marketing or sale in interstate commerce of unregistered securities. 15 U.S.C. §§ 77e(a), (c). To establish a violation, a plaintiff must show that no registration statement was in effect regarding the securities, the defendant offered or sold the securities, and that the defendant did so through interstate commerce. *SEC v. Phan*, 500 F.3d 895, 902 (9th Cir. 2007).

Here, the Complaint alleges that the individual Defendants offered and sold securities issued by Web Blockchain Media, Inc., Heartland Income Properties, LLC, and Austin Partners I, LLC, for which there were no registration statements in effect. Compl. ¶ 27, 38-42, 44. Further, the Complaint alleges that these sales and offers took place through interstate commerce, as Defendants solicited customers across the country. *See, e.g., id.* ¶ 39.

Thus, these well-pleaded allegations state a claim for violations of Section 5 of the Securities Act.

2. **Section 15 of the Exchange Act**

The second claim for relief asserts a violation of Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1). *Id.* ¶¶ 47-49. This section prohibits unregistered brokers or dealers from effecting or attempting to effect any securities transaction through interstate commerce. 15 U.S.C. § 78o(a)(1). A broker is "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A).

Here, the Complaint alleges that the individual Defendants were actively soliciting and selling securities from issuers to individuals in exchange for transaction-based compensation from the issuers. Compl. ¶¶ 24-26, 30-32, 37-38. These allegations are sufficient to establish that the individual Defendants met the definition of a broker. *See SEC v. Feng*, 935 F.3d 721, 731-32 (9th Cir. 2019)

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

(approving use of the factors set out in *SEC v. Hansen*, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984) to determine whether a party is a broker). Further, the Complaint alleges that the individual Defendants acted as brokers while attempting to sell securities across the country in interstate commerce, all without having registered as a broker or being affiliated with a registered broker. Compl. ¶¶ 7, 24-26, 30-32, 37-39.

Thus, these well-pleaded allegations state a claim for violations of Section 15 of the Exchange Act.

### 3. Section 17 of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5

The third and fourth claims for relief assert violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Compl. ¶¶ 50-58. All of these claims require a fraudulent misstatement, material omission, or other fraudulent scheme or artifice in connection with the offer or sale of a security by means of interstate commerce. *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855-56 (9th Cir. 2001). Further, they all require scienter, which is satisfied by recklessness, except in the case of Section 17(a)(2) and (3) which require only negligence. *Id.* at 856. Finally, Section 17(a)(2) requires a showing that the defendant obtained money or property by means of the fraud. *Vernazza v. SEC*, 327 F. 3d 851, 858 (9th Cir. 2003).

Here, the Complaint alleges that the individual Defendants made fraudulent misstatements and material omissions in connection with the Austin Partners I Fund. Namely, it alleges that the individual Defendants represented to investors that their money would be used to purchase "stocks, real estate, precious metals, energy" and interests in Web and LIMC, when in fact the Fund made only one investment in Heartland, and that they also omitted the fact that they were paid a 30% commission on the Heartland investment. Compl. ¶¶ 37-39, 42. Further, the Complaint alleges that the individual Defendants made these misrepresentations or omissions knowingly or at least recklessly, *id.* ¶¶ 53, 57, in that their misleading nature was "so obvious that the [defendants] must have been aware of it." *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990) (internal quotation marks and citation omitted). Finally, with respect to Section 17(a)(2), the Complaint alleges that the individual Defendants received money or property from their frauds by virtue of the commissions they received from Heartland and from the money they misappropriated from the Fund for their own personal expenses. Compl. ¶ 39.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

Accordingly, these well-pleaded allegations state a claim for violations of Section 17 of the Securities Act, Section 10 of the Exchange Act, and Rule 10b-5.

### 4. Advisers Act Violations

The Complaint also alleges that the individual Defendants violated Sections 206(1), (2), and (4) of the Investment Advisers Act, 15 U.S.C. §§ 80b-6(1), (2), (4), and Rule 206(4)-8, 17 C.F.R. § 275.206(4)–8(a). Compl. ¶¶ 59-64. An "investment adviser" includes "any person who, for compensation, engages in the business of advising others […] as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11).

Sections 206(1) and (2) prohibit an investment adviser from using instruments of interstate commerce to employ any scheme or to engage in any transaction, practice, or course of business that defrauds or operates as a fraud or deceit on a client or prospective client. 15 U.S.C. §§ 80b-6(1), (2). Section 206(4) and Rule 206(4)-8 prohibit an investment adviser to a pooled investment vehicle from making an untrue or misleading statement or omission of material fact to investors. *Id.* § 80b-6(4); 17 C.F.R. § 275.206(4)–8(a). A fact is "material" if a reasonable investor would consider it important in making an investment decision. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988).

Here, the Complaint alleges that the individual Defendants acted as "investment advisers" by advising potential investors in the Fund about the advisability of purchasing shares of the Fund and its portfolio and doing so for compensation through the distributions they took from the Fund. Compl. ¶¶ 34-40. The Complaint also alleges that the individual Defendants used instruments of interstate commerce, including telemarketing sales calls, to defraud investors by soliciting their money for purported investments and then misappropriating it for their own personal expenses. *Id.* ¶¶ 34-42.

Further, facts showing a misleading statement or omission for purposes of a Section 10(b) and Rule 10b-5 violation will also support a violation of Section 206(4) and Rule 206(4)-8 given their parallel elements. *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1363 n.4 (9th Cir. 1993). Thus, since, as previously discussed, the Complaint adequately alleges a violation of Section 10(b) and Rule 10b-5, it also alleges misleading statements or omissions under Section 206(4) and Rule 206(4)-8. The Complaint alleges misrepresentations that were material, such as representing that investors' money would be

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

invested in multiple securities when it was in fact only invested in Heartland and much of it was misappropriated for the individual Defendants' personal expenses. Compl. ¶¶ 38-39. A reasonable investor would have wanted to know these facts prior to investing. *See Basic*, 485 U.S. at 231.

Therefore, the well-pleaded allegations state a claim for violations of the Advisers Act and Rule 206(4)-8.

### 5. Unjust Enrichment

The Complaint also seeks disgorgement from the unjustly enriched relief Defendants. Compl. Prayer for Relief IV. A "relief defendant" is unjustly enriched if the SEC can demonstrate that it "(1) received ill-gotten funds and (2) do[es] not have a legitimate claim to those funds." *SEC v. World Capital Mkt., Inc.*, 864 F.3d 996, 1003 (9th Cir. 2017).

Here, the Complaint alleges that the relief Defendants, entities controlled by the individual Defendants, received some of the investor funds from the individual Defendants' fraudulent Fund offering, as well as some of the commissions paid by Web and Heartland for the individual Defendants' unregistered brokerage activity. Compl. ¶¶ 25, 29-32, 41-42. These allegations establish that these funds were ill-gotten and that the relief Defendants have no legitimate entitlement to them. *See World Capital Mkt.*, 864 F.3d at 1003.

Accordingly, the well-pleaded allegations in the Complaint state a claim for unjust enrichment against the relief Defendant.

### 6. Conclusion

Thus, the Complaint contains well-pleaded allegations which, taken as true, state a claim for a relief on all of Plaintiff's causes of action. Accordingly, the second and third *Eitel* factors weigh strongly in favor of granting default judgment.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

### B. Remaining *Eitel* Factors

The Court now turns to the remaining *Eitel* factors, which also largely favor granting default judgment.

First, the Plaintiff is likely to be prejudiced absent a grant of default judgment because its ability to vindicate the securities laws would be frustrated. *See SEC v. Wallace*, 2017 WL 8230026, at *3 (C. D. Cal. May 8, 2017) ("The SEC's duty to enforce federal securities laws would be undermined if the Court were to allow [defendant] to escape liability simply by not responding to the case").

As for the amount of money at stake, in general, a greater sum weighs in favor of a decision on the merits whereas default judgment may be more appropriate in a case involving a lesser sum. *See* 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2685 (3d ed. 2014). Here, the SEC is seeking to disgorge approximately $830,000 from the Defendants and is also seeking civil penalties against the individual Defendants. Mot. Default J. 22-24. While this is certainly not an insignificant amount, it is not so large an amount as to clearly warrant denying default judgment. *See, e.g., Rual Trade Ltd. v. Viva Trade LLC*, 549 F.Supp.2d 1067 (E.D. Wis. 2008) (denying default judgment where claims amounted to more than $10 million). This conclusion is bolstered when considering the amount at stake relative to the seriousness of the Defendant's conduct, *see PepsiCo*, 238 F.Supp.2d at 1176, given that the allegations here detail serious, repeated violations of the securities laws.

Nor does the fifth factor, the possibility of disputed material facts, weigh against granting default judgment here. When a defendant has defaulted, the well-pleaded allegations of the complaint are taken as admitted. *Benny*, 799 F.2d at 495. Further, the Defendants have not appeared at all to contest the issues; this is not a case where a defaulted defendant makes an appearance and disputes the material facts in the pleadings. *See, e.g., Eitel*, 782 F.2d at 1472. Thus, the minimal possibility of disputes of material facts also supports granting default judgment.

Similarly, because Defendants were properly served and have not appeared or participated in this litigation, it is unlikely that the failure to respond is due to excusable neglect. *See Baccam*, 2017 WL 5952168, at *8 ("The possibility of excusable neglect is remote where the defendant is provided proper notice of the pending suit, but does not contact the court or the plaintiff in any manner.").

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

Finally, while the last *Eitel* factor reflects the policy favoring judgment on the merits, this factor is not given significant weight when default judgment is otherwise warranted. *See id.*; *PepsiCo*, 238 F.Supp.2d at 1177.

Thus, while the amount of money at stake and the policy favoring merits judgments do militate slightly against granting default judgment, they are heavily outweighed by the other factors discussed above. Accordingly, in light of the *Eitel* factors, the Court concludes that a default judgment is warranted here.[2]

### IV. Remedies

#### a. Injunction

The SEC seeks a permanent injunction enjoining the individual Defendants from future violations of Sections 5 and 17(a) of the Securities Act, Sections 10(b) and 15(a)(1) of the Exchange Act and Rule 10b-5, and Sections 206(1), (2), and (4) of the Advisers Act and Rule 206(4)-8. Compl., Prayer for Relief I., II. It also seeks an injunction against Michael, enjoining him from directly or indirectly soliciting any person or entity to purchase or sell any security, including through any entity owned or controlled by him. *Id.*, Prayer for Relief III.[3]

The Securities Act, Exchange Act, and Advisers Act all provide for the entry of a permanent injunction. 15 U.S.C. §§ 77t(b), 78u(d)(1), 80b-9(d). To obtain a permanent injunction, the SEC must show that there is a reasonable likelihood of future violations of the securities laws. *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). In making this determination, courts look to past violations, the degree of scienter involved, the defendant's professional occupation, whether the current violations were isolated or repeated, and whether the defendant recognized the wrongfulness of his conduct or assured against future violations. *Id.* Further, the Exchange Act authorizes "any equitable relief that may be appropriate

---

[2] The Court also concludes that the SEC has complied with the procedural requirements of Fed. R. Civ. P. 55(a) and 54(c) and Local Rule 55-1, as required for entry of a default judgment.

[3] The SEC is already seeking a similar injunction against Moleski in a separate action for other securities violations, and thus it does not seek one here.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

or necessary for the benefit of investors," 15 U.S.C. § 78u(d)(5), which can include conduct-based injunctions to prohibit individuals from soliciting others to buy or sell securities.

Here, the SEC has shown that there is a reasonable likelihood that the individual Defendants will commit future violations of the securities laws absent injunction. The Complaints alleges repeated violations of the securities laws committed knowingly or at least with severe recklessness. Compl. ¶¶ 21-42, 53, 57. And because the individual Defendants have not participated in this action, they have not demonstrated any recognition of the wrongfulness of their conduct, nor provided any assurances that they will not commit future violations. *See Baccam*, 2017 WL 5952168, at *9 (issuing injunction in default judgment where defendants did not answer and thus did not provide assurances against future violations). Finally, the Complaint also alleges that Moleski is a repeat offender, being the subject of another ongoing SEC enforcement action and previous securities-related state suits. Compl. ¶ 13. These considerations therefore warrant the issuance of an injunction against the individual Defendants enjoining them from future securities violations and an injunction against Michael enjoining him from future solicitations to buy or sell securities.

   b. **Disgorgement and Prejudgment Interest**

The SEC also seeks disgorgement of the ill-gotten proceeds from the Defendants, as well as prejudgment interest on those amounts. Mot. Default J. 22-23. The following table summarizes the amounts sought.

| Party | Disgorgement Amount | Prejudgment Interest | Total |
|---|---:|---:|---:|
| Stephen Moleski | $61,625.07 | $775.99 | $62,401.06 |
| David Michael | $327,815.55 | $4,127.85 | $331,943.40 |
| Alliance Management Group, LLC | $0 | $0 | $0 |
| Austin Marketing Group, LLC | $117,635.00 | $1,481.26 | $119,116.26 |
| Austin Media Group, LLC | $50,545.00 | $636.47 | $51,181.47 |
| Austin Partners LLC | $6,225.12 | $78.39 | $6,303.51 |
| Austin Partners I, LLC | $260,606.70 | $3,281.56 | $263,888.26 |

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

A disgorgement award equal to the wrongdoer's net profit is permissible under 15 U.S.C. § 78u(d)(7). *Liu v. SEC*, 140 S.Ct. 1936, 1942-43 (2020). Because the aim of disgorgement is to divest *all* ill-gotten gains from the illegal conduct, disgorgement typically includes prejudgment interest, thus preventing the wrongdoer from otherwise profiting off the illicit proceeds. *SEC v. Cross Fin. Servs., Inc.*, 908 F.Supp. 718, 734 (C.D. Cal. 1995). To justify a particular amount of disgorgement, the SEC must establish that the amount is a reasonable approximation of the defendant's ill-gotten gains. *SEC v. Platforms Wireless Internet Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010).

Here, the SEC has established that the amounts in seeks in disgorgement are reasonable approximations of the profit each Defendant received from the violations of the securities laws. The SEC has submitted a sworn declaration from James Thibodeau, one of the staff attorneys who investigated this case, which indicated that he analyzed bank records and other financial documents, spoke to witnesses, and reviewed other documentary evidence to calculate to the profit each Defendant obtained from the illegal conduct. Mot. Default J., Thibodeau Decl. ¶¶ 1-9. The SEC also submitted a sworn declaration from Tracy Combs, another attorney on the case, detailing the calculations of prejudgment interest on the amount of each Defendant's profit. Mot. Default J., Combs. Decl. ¶¶ 12-19; *id.*, Ex. 1-6.

These declarations are sufficient to establish a reasonable approximation of each Defendant's ill-gotten gains. *See Baccam*, 2017 WL 5952168, at *10. And because the Defendants have not responded to this action, they have produced no evidence that the SEC's calculation is inaccurate. *See Platforms Wireless*, 617 F.3d at 1096 (noting that once a reasonable approximation is established, the burden then shifts to the defendant to show that the approximation is incorrect). Accordingly, the Defendants are liable for disgorgement in the amounts specified above.

### c. Civil Penalties

Finally, the SEC also seeks civil penalties against the individual Defendants. Compl., Prayer for Relief V. The Securities Act, Exchange Act, and Advisers Act all provide for a three-tiered structure of civil penalties. 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B), 80b-9(e)(2). The steepest penalties enumerated in the third tier may be imposed where the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.*

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-01065-SVW-E | Date | October 21, 2021 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Stephen Scott Moleski et al* | | |

Because civil penalties, like injunctions, are intended to deter future violations, courts often look to the same factors for determining whether an injunction should issue that are set out in *Murphy*, 626 F.2d at 655. *See, e.g., SEC v. Abacus Int'l Holding Corp.*, 2001 U.S. Dist. LEXIS 12635, at *15 (N.D. Cal. Aug.16, 2001). Thus, for the same reasons the *Murphy* factors suggest that an injunction is warranted, they also suggest that civil penalties are warranted. *See supra* Section III.a.

The violations of the individual Defendants regarding the Austin Partners I Fund involved fraud and deceit, including misrepresentations as to how investors' money would be used. Compl. ¶¶38-39. Further, the violations resulted in substantial losses and risk thereof because Fund assets were invested in only one security, rather than a portfolio of assets as Defendants claimed, and also because Fund assets were misappropriated by the individual Defendants for personal use. *Id.* Accordingly, third-tier penalties are appropriate. *See Baccam*, 2017 WL 5952168, at *10-11 (imposing third-tier penalties); *SEC v. Souza*, 2011 WL 2181365, at *3 (E.D. Cal. June 3, 2011) (same).

Third-tier penalties cannot exceed the greater of a statutory maximum, which is $195,047 for natural persons, or the gross pecuniary gain to the defendant. *See* 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B), 80b-9(e)(2). Accordingly, the Court imposes a civil penalty of the pecuniary gain to each individual Defendant: $61,625.07 for Defendant Moleski and $327,815.55 for Defendant Michael.

V.     **Conclusion**

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment. The individual defendants are enjoined from further violations of Sections 5 and 17(a) of the Securities Act, Sections 10(b) and 15(a)(1) of the Exchange Act and Rule 10b-5, and Sections 206(1), (2), and (4) of the Advisers Act and Rule 206(4)-8. Further, Defendant Michael is enjoined from directly or indirectly soliciting any person or entity to purchase or sell any security. Each Defendant is liable for disgorgement in the amounts specified in the table above. And finally, Defendant Moleski is liable for $61,625.07 in civil penalties, and Defendant Michael is liable for $327,815.55 in civil penalties.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | PMC |